BEATTY, Justice
(dissenting):
The majority holds that the trial court erred in “enjoining the payment of expense allowances to members of the legislature during the recess of the special session.” This holding seems to be premised on the *920 separation of powers doctrine, with the thrust being that expense allowances are solely within the power of the legislature with the courts having no power to review legislative action in this regard. By taking that position, the majority overlooks the fact that the power of government lies in the people of this state, as expressed in the Constitution which they adopted, and does not reside solely in the legislature.
The majority disregards the fact that the authority of the legislature to pay its members an expense allowance is expressly limited by Amendment 57, a constitutional provision, and the responsibility of the judiciary is to construe and enforce constitutional provisions. See Evans v. Abney, 396 U.S. 435, 437, 90 S.Ct. 628, 629, 24 L.Ed.2d 634 (1970).
Amendment 57 provides, in pertinent part, that “each member of the legislature also shall be allowed expenses ... not exceeding an amount to be fixed by the legislature, incurred in the performance of his duties.” (Emphasis added.) This amendment “presently stands as the governing constitutional section on legislative expense allowances. It is the language of this [constitutional] amendment, which the people approved, which sets out the limits of legislative power.” (Emphasis added.) Hart v. deGraffenreid, 388 So.2d 1196, 1198 (Ala.1980). Although Hart is relied upon extensively in the majority opinion, it is clear from the above quoted constitutional language, that Hart acknowledges that Amendment 57 is a limiting provision and not a recognition of some unbridled power vested in the legislature in regard to expense allowances.
It is clear from its language that when the people of Alabama approved Amendment 57 they were not approving it as a blank check tendered to the legislature. By approving Amendment 57, the people placed an express condition on the reimbursement of expenses to members of the legislature, to-wit: the expenses must have been incurred in connection with their legislative duties. This amendment being a constitutional provision, it is clearly within the power of the courts of this state to construe the language of Amendment 57 to determine the boundaries within which the legislature may exercise its power with regard to expense allowances. And with the power to construe this provision necessarily comes the power to enjoin legislative action which contravenes the provision.
As the majority has noted, by a series of acts the legislature has fixed its members’ expense allowance at $85 per diem while in session. Appellee/respondent Zeigler is not presently contesting the legislature’s authority per se to set its members’ per diem expense allowance at $85; rather, Zeigler questions the legislature’s authority to pay its members this amount on a blanket basis while in Christmas recess. The determination of this issue necessarily rests upon an interpretation of Amendment 57.
Reading the $85 per diem allowance in conjunction with Amendment 57, each member of the legislature is to be “allowed expenses ... not exceeding [$85 per day] incurred in the performance of his duties.” The clear meaning of this provision is that legislators are to be reimbursed up to $85 per day for expenditures necessary to the fulfillment of their legislative duties. Amendment 57 does not permit the payment of the full $85 per day to a legislator who incurred no expenses at all or some amount less than $85. The amendment is obviously intended to reimburse legislators only for those expenses actually incurred. As the majority in Hart, supra, elaborated: “[TJhese expense allowances exist as a means of reimbursing legislators for expenditures incurred in being called away from home in service to the state and in carrying on their official responsibilities." (Emphasis added.) 388 So.2d at 1200.
The majority in Hart also stated that “the payment of legislative expense allowances has never been considered any part of the personal compensation awarded to Alabama legislators.” Id. However, if a legislator incurs less than $85 per day in expenses, yet is paid the full $85 expense *921 allowance, the conclusion is inescapable that the difference between the $85 paid and the amount actually incurred must be considered to be additional income. Cf. [1985] 2 Fed.Taxes (P-H) Reimbursements § 61, para. 10. This would result in, as Zeigler contends, a violation of Amendment 92, which prohibits the increase of a legislator’s “salary, fees or other compensation” during his term of office.
In the final analysis, this case turns on whether the plenary power of the legislature is superior to the power of the people who adopted Amendment 57 with its express limitation on legislative expense allowances. If the plenary power of the legislature is as the majority describes it, why was it necessary for Amendment 57 to be adopted by the people? If the subject of expenses was solely within the power of the legislature, why was it necessary to include the language “incurred in the performance of [legislative] duties”? Clearly, the purpose of Amendment 57 was to expressly condition receipt of expense allowances upon expenditures “incurred in the performance of [legislative] duties.” Contrary to the legion of cases on the subject, the majority now holds that the legislature’s power is supreme, unfettered even by the express limitation placed upon that power by the Constitution itself.
In his order granting the preliminary injunction, the trial judge stated: “The testimony of two legislators was to the effect that their expenses were substantially less than the expense allowance during the 13-day holiday period while the legislature was in recess.” The trial judge also specifically found that:
“(a) there is a substantial likelihood that Plaintiff will prevail on the merits;
“(b) because once paid, expense allowances probably cannot be recovered, there is substantial threat that Plaintiff and the taxpayers of this State will suffer irreparable injury if the preliminary injunction is not granted;
“(c) the threatened injury to Plaintiff and others outweighs the threatened harm the injunction may do the Defendants; and
“(d) granting the preliminary injunction will serve the public interest.”
I would uphold these findings by the trial court and affirm the issuance of the preliminary injunction.
FAULKNER, J., concurs.